# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| METARAIL, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Civil Action No. 23-1116-GBW<br><br>**REDACTED PUBLIC VERSION** |

## MEMORANDUM ORDER

Pending before the Court are Google LLC's ("Google") Motion to Transfer Venue to the Northern District of California ("Motion to Transfer") (D.I. 22), which has been fully briefed (D.I. 23; D.I. 30; D.I. 34), and Google's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") (D.I. 16), which has been fully briefed (D.I. 17; D.I. 19; D.I. 21). For the reasons set forth below, the Court grants Google's Motion to Transfer and denies-as-moot Google's Motion to Dismiss.

## I.   LEGAL STANDARD

Section 1404(a) of Title 28 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Federal Circuit applies the law of the regional circuit on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (on mandamus review). Courts in the Third Circuit evaluate a motion to transfer under the factors outlined in *Jumara v. State Farm Insurance*, 55 F.3d 873, 879-80 (3d Cir. 1995). *See, e.g., In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879-80). The movant has the burden to establish that the

interests favor transfer. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 436 (D. Del. 2015) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)) (citing *Jumara*, 55 F.3d at 879).

The District Court must first decide whether the case could have been brought in the district where the movant wishes to transfer. *Jumara*, 55 F.3d at 878. If venue would have been proper in that district, the court then weighs whether the public and private interest factors favor transfer, keeping in mind that "plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879 (citations omitted). The private interest factors to consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests [] include[]: [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (citations omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (cleaned up); *see Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *4 (D. Del. July 26, 2021). A plaintiff's choice of proper forum "is still the most important factor when a plaintiff has a principal place of business outside Delaware or has no connection to Delaware other than its choice to sue here, or other than its choice to sue here and its Delaware incorporation." *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020). "But, in the overall balancing, while such a

2

plaintiff's choice will still be the most important factor, it will not dominate the balancing to the same extent as it otherwise might." *Id.*

## II.   DISCUSSION

Since this action could have been brought in the Northern District of California (*see Dialect, LLC v. Google, LLC*, No. CV 23-378-GBW, 2024 WL 1328908, at *2 (D. Del. Mar. 28, 2024); *see also* D.I. 30 (not contesting as much)), the Court proceeds to analyze the *Jumara* factors, which, on balance, weigh in favor of the transfer of this action to the Northern District of California.[1] The Court addresses each factor below.

**Plaintiff's Forum Preference**: As discussed above, it "is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice should not be lightly disturbed." *Shutte*, 431 F.2d 22, 25. Here, "it is plainly rational and legitimate for [Plaintiff] to choose to sue [Defendant] in [Defendant's] state of incorporation." *FG SRC LLC v. Xilinx, Inc.*, No. 20-601-LPS, 2021 WL 495614, at *2 (D. Del. Feb. 10, 2021). While Plaintiff's choice of forum normally merits paramount consideration, that Plaintiff's "principal place of business" is "in Texas diminishes . . . argument that it is at home in Delaware." *See Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027, at *2 (D. Del. Sept. 25, 2014); *see* D.I. 30 at 8 (admitting that Plaintiff "does not have physical offices in Delaware"). All said, "Plaintiff has chosen the District of Delaware as the

---

[1] MetaRail contends that transfer is inappropriate because the Northern District of California lacks personal jurisdiction over MetaRail. D.I. 30 at 4-5. However, there "is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

3

proper forum for this case, and this factor weighs against transfer despite the [admitted] lack of connection." *See Inst. for Env't Health Inc. v. Nat'l Beef Packing Co., LLC*, No. 23- 0826, 2024 WL 2208948, at *4 (D. Del. May 16, 2024).

**Defendant's Preference**: Google's preference to litigate in the Northern District of California weighs in favor of transfer given, at least, that the Norther District of California is where Google "operates its principal place of business and headquarters." *See Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, C.A. No. 16-733-GMS, 2017 WL 1536394, at *4 (D. Del. Apr. 27, 2017).

**Whether the Claims Arose Elsewhere**: Google asserts that "over ▇ . . . of the U.S.-based engineers in the SAGE team that is responsible for Search Ads" at issue are based in the Northern District of California. D.I. 23 at 9. Google similarly asserts that the "▇ of Google's U.S. employees involved in designing, developing, and marketing Google's ad products are located in" the Northern District of California. D.I. 23 at 9-10. Notwithstanding that MetaRail alleges infringing conduct in this District (*see, e.g.*, D.I. 15, ¶¶ 8, 34, 41), "the infringement claims [here] have 'deeper roots' in the Northern District of California than in the District of Delaware" and thus, this "factor weighs slightly in favor of transfer" (*see Dialect*, 2024 WL 1328908, at *2 (citation omitted)).

**Convenience of the Parties**: Google contends that transfer "will save significant logistical and travel costs for Google because many of the potentially relevant witnesses are located in" the Northern District of California. D.I. 23 at 10. In addition, Google contends that transfer will not negatively affect the convenience of MetaRail, which, according to Google, has already accepted the costs of travel by filing this action outside of the district in which its principal place of business is located. D.I. 23 at 10. In fact, Google further asserts that, until days ago, multiple officers at

4

MetaRail described themselves as being located in the Northern District of California. D.I. 23 at 10. Google also contends that it "is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties." D.I. 23 at 10 (quoting *Ithaca Ventures*, 2014 WL 4829027 at *4).

On the other hand, "Google is a multi-billion-dollar Delaware corporation in this District" which means that any inconvenience to litigating in this District is "minimal, at best." *Dialect*, 2024 WL 1328908, at *3. In addition, MetaRail purportedly has limited financial means and, according to MetaRail, the "cost of litigating in" the Northern District of California "will be higher for MetaRail than litigating in Delaware" since the "cost of living in" the Northern District of California is, again according to MetaRail, "more than 62% higher than in Wilmington." D.I. 30 at 13. As to the linked-in profiles, MetaRail contends that the two individuals concerned, MetaRail's CEO and CFO, "recently updated their LinkedIn profiles to reflect that they live in Texas" where they have lived "for years." D.I. 30 at 13 n.6.

Having considered the parties' arguments, the Court holds that this factor on balance weighs slightly in favor of transfer.[2]

**Convenience of the Witnesses**: The Court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. A "party witnesses or witnesses who are employed by a party carry no weight as each party is able and, indeed, obligated to procure the attendance of its own employees

---

[2] MetaRail faults Google for not identifying specific witnesses. D.I. 30 at 11. Google counters that MetaRail failed to include allegations in MetaRail's Amended Complaint that would enable Google to identify the employees that would serve as witnesses in this case. D.I. 23 at 3-4. MetaRail in turn contends that Google's "excuse" is "specious." D.I. 30 at 12-13. Given these arguments and the fact that Google does, in fact, identify that the majority of employees for the type of technology at issue reside in the Northern District of California, the Court does not find that Google's alleged failure to not identify specific witnesses weighs against transfer.

for trial." *Dialect*, 2024 WL 1328908, at *3. Here, "Google has identified [nine] non-party witnesses outside of Google's control: [two] inventors of the Asserted Patents (all in [the Northern District of California]), [and] [seven] inventors of . . . prior art systems located in the Northern District of California." *See id.*; *see also* D.I. 23 at 11-12. As such, there are many witnesses that "are within the subpoena power of the Northern District of California." *See id.* "Given these witnesses have no current relationship with Google is sufficient to provide some reason to believe that they would refuse to testify." *See id.* (cleaned up); *see also Williamson v. Google Inc.*, No. CV 14-216-GMS, 2015 WL 13311284, at *2 (D. Del. Mar. 2, 2015) ("Google need not prove that its identified witnesses may actually be unavailable for trial in Delaware. It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power." (cleaned up)). For the foregoing reasons, this factor weighs in favor of transfer.[3]

**Location of Books and Records**: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," such that "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. Here, Google asserts that "documents related to Google products are created and maintained by

---

[3] The Court acknowledges that this Court has also held that absent "contrary evidence, it is reasonable to assume that important non-party witnesses are likely to voluntarily appear for trial." *FG SRC*, 2021 WL 495614, at *5. However, a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (quoting *Camreta v. Greene*, 563 U.S. 692 (2011)). Moreover, where "there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear [in another court]," such facts weigh in favor of transfer "and not only slightly." *In re Genentech, Inc.*, 566 F.3d at 1345.

6

the employees working on those products" and contends, "given that most Ads-Related engineers are based in" the Northern District of California, "the majority of potentially relevant technical documents would also be created and maintained in" the Northern District of California. D.I. 23 at 12-13. However, "[r]ecent technological advances have reduced the weight of this factor to virtually nothing." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011). Thus, this factor, though it arguably favors transfer slightly, is essentially neutral.

**Enforceability of the Judgment**: "The parties agree this factor is neutral." D.I. 30 at 17.

**Practical Considerations**: Neither party advances reasons not otherwise addressed elsewhere in the parties' briefs and, thus, this factor is neutral.

**Relative Administrative Difficulty**: "According to the most recent data provided by the United States Courts, the weighted case filings per active judgeship in this District [for the twelve month period ending June 30, 2025] were [618]." *See Dialect*, 2024 WL 1328908, at *4; *see also* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf. "By comparison, the weighted case filings per active judgeship in the Northern District of California for that period were [705]." *See Dialect*, 2024 WL 1328908, at *4; *see also* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf. In addition, pending cases per judgeship for the same time period ending on June 30, 20205 in this District were 570, as compared to the Northern District of California's 1,034. U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf.

7

Finally, the median time from filing to trial in civil cases during the same time period in this District was 35 months and in the Northern District of California was 37.6 months. Thus, the relative administrative difficulty in both districts is about the same. Therefore, this factor is neutral.

**Local Interest**: "As far as local interests are concerned, this factor is typically neutral in patent litigation 'because patent issues do not give rise to a local controversy or implicate local interests.'" *OpenTV, Inc. v. Netflix, Inc.*, No. CV 12-1733 (GMS), 2014 WL 1292790, at *4 (D. Del. Mar. 31, 2014) (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F.Supp.2d 635, 643 (D. Del. 2008)). "Although Defendant does have connections with the Northern District of California (*e.g.*, employees there and generating revenue within the state), the Court finds it relevant that Defendant is a global company with a significant number of employees throughout the world." *Arbor Glob. Strategies LLC v. Xilinx, Inc.*, No. CV 19-1986 (MN), 2020 WL 4673832, at *5 (D. Del. Aug. 12, 2020). For these reasons, this factor is neutral.

**Public Policies of the Fora**: On one hand, this "factor weighs slightly against transfer because both Plaintiff and Defendant are Delaware corporations and public policy encourages Delaware corporations to resolve disputes in Delaware courts." *P Tech, LLC v. Arthrex, Inc.*, No. CV 21-968 (MN), 2022 WL 1490733, at *6 (D. Del. May 11, 2022); *Virentem Ventures, LLC v. YouTube, LLC*, No. CV 18-917 (MN), 2019 WL 2131877, at *6 (D. Del. May 16, 2019) (same); *Magnacross LLC v. GE MDS LLC*, No. CV 20-964 (MN), 2020 WL 6581530, at *9 (D. Del. Nov. 10, 2020) (same).[4] On the other hand, "there is no reason to believe that states would apply

---

[4] The Court acknowledges that this Court has on at least one occasion held that the policy invoked is "implemented through Delaware's state courts" and not the federal courts and, thus, found the factor neutral. *See NXP USA, Inc. v. IMPINJ, Inc.*, No. CV 19-1875-RGA, 2020 WL 5665257, at *5 (D. Del. Sept. 23, 2020). However, as described above, a "decision of a federal district court

differing public policy considerations in the application of federal patent law." *Dialect*, 2024 WL 1328908, at *4. In sum, this factor weighs slightly against transfer.

**Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases**: "The parties agree this factor is neutral." *See* D.I. 30 at 19.

## III. CONCLUSION

As described above, the majority of operative events in this action have occurred or do occur in the Northern District of California. Google is headquartered in the Northern District of California. It appears likely that the majority of relevant witnesses from Google reside in the Northern District of California. The two inventors of the asserted patents reside in the Northern District of California. The inventors of seven prior art systems reside in the Northern District of California. Although MetaRail and Google are both incorporated in Delaware, MetaRail's principal place of business is currently located in Texas and was previously located in the Northern District of California. MetaRail has no employees or operations in Delaware, and the alleged infringement occurred everywhere in the country. Under the circumstances of this action, MetaRail's preference for this forum does not dominate the balancing to the same extent it otherwise would. Thus, on balance, the *Jumara* factors weigh in favor of transfer. For all these reasons, the Court grants Google's Motion to Transfer Venue to the Northern District of California (D.I. 22). Since the Court is granting Google's Motion to Transfer, the Court denies-as-moot Google's Motion to Dismiss Plaintiff's First Amended Complaint (D.I. 16) without prejudice to re-filing in the Northern District of California pursuant to that Court's local rules.

---

judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." *Daubert*, 861 F.3d 382, 395 (citation omitted).

WHEREFORE, at Wilmington this 24th day of September 2025, **IT IS HEREBY ORDERED** that Google's Motion to Transfer Venue to the Northern District of California (D.I. 22) is **GRANTED** and that Google's Motion to Dismiss Plaintiff's First Amended Complaint (D.I. 16) is **DENIED-AS-MOOT** without prejudice to re-filing in the Northern District of California pursuant to that Court's local rules. **IT IS FURTHER ORDERED THAT**, because this Memorandum Order is filed under seal, the parties shall meet and confer and, no later than thirty (30) days after entry of this Memorandum Order, file a proposed redacted version of the Memorandum Order, along with a motion supported by a declaration that contains a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). If the parties do not file a proposed redacted version of the Memorandum Order and a corresponding motion by the deadline, or if the Court determines the motion lacks a meritorious basis, the Memorandum Order will be unsealed in whole or in part.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE